Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 3586 | DATE | 5/12/2000 |
| CASE TITLE | Zurba vs. United States of America | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court denies both plaintiff's and defendant's motions for summary judgment (8-1, 11-1).

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | MAY 1 8 2000 | | |
| | Docketing to mail notices. | | docketing deputy initials | 24 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUDMILLA ZURBA, )
)
        Plaintiff, )
)
vs. ) Case No. 99 C 3586
)
UNITED STATES OF AMERICA, )
)
        Defendant. )

DOCKETED
MAY 1 8 2000

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Shortly before 7:45 a.m. on January 11, 1995, Steven Peterson, a Chicago police officer assigned to work with the Federal Bureau of Investigation as a member of the Violent Crimes Task Force, was driving on Chicago's Kennedy Expressway in an unmarked FBI-owned car. He received a radio report that another Task Force member had located, on the far north side of Chicago, the car of a suspected armed bank robber for whom an arrest warrant had been issued the previous day. Peterson responded that he was coming to assist the other officer. He activated the siren and flashing headlights on his car, exited the Kennedy Expressway at Ohio Street, and proceeded east, intending to travel to Lake Shore Drive and then continue north to reach his destination.

At the intersection of Ohio Street and Michigan Avenue, a Chicago Police Department traffic control aide heard Peterson's siren and saw his flashing headlights before he reached the intersection, and she acted to stop first the southbound traffic on Michigan (the lane nearest Peterson's car) and then the northbound traffic. Peterson entered the intersection against a red

light but says that before doing so, he saw the traffic control aide with her arms in the air instructing the northbound Michigan Avenue traffic to stop. Peterson says he slowed to almost a complete stop before entering the intersection, observed that the southbound lanes were clear, and then entered the intersection. Peterson's car was struck by two northbound vehicles as he crossed the northbound lanes. The impact sent his car sideways in a northeasterly direction into plaintiff Ludmilla Zurba, who was standing on or just off the sidewalk on the northeast corner of the intersection. Zurba suffered serious injuries, eventually requiring removal of her gall bladder and a portion of one kidney.

One of the northbound vehicles fled the scene. The driver of the other vehicle, Ivan Klaric, was given traffic tickets for two violations of Chicago city ordinances: failure to yield the right of way to an emergency vehicle, and failure to obey the directions of a traffic control aide.

Peterson and several pedestrians estimate that he entered the intersection at no more than 5 to 10 miles per hour. One other bystander, however, estimated that Peterson was traveling 30 miles per hour at the time of the collision. It had been raining and the temperature was around 30 degrees; there is some evidence suggesting that it was either raining or misty at the time of the collision and that the pavement was slippery.

A few days after the accident, Zurba filed a lawsuit against Klaric in state court. That case has been resolved. On May 28, 1999, Zurba filed this case pursuant to the Federal Tort Claims Act, alleging that Peterson acted negligently and/or willfully and wantonly and caused her injuries. Both sides have moved for summary judgment on the issue of liability.

The Federal Tort Claims Act provides that the United States is liable for the acts or omissions of its employees "under circumstances where the United States, if a private person,

2

would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b); *see also* 28 U.S.C. §2674.

The first issue is what standard of care applies to Peterson's actions. In Illinois, a public employee is not liable for his acts or omissions in the execution or enforcement of laws unless the act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. Willful and wanton conduct means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety or others or their property." 745 ILCS 10/1-210.

Defendant also cites another Illinois statute with regard to the issue of the standard of care. Section 11-205 of the Illinois Vehicle Code says that the driver of an authorized emergency vehicle, when responding to an emergency call, may proceed through a stop light, "but only after slowing down as may be required and necessary for safe operation," and may also exceed the speed limit, "so long as he does not endanger life or property." 625 ILCS 5/11-205(b) & (c). The statute goes on to provide that these provisions "do not relieve the driver of an authorized emergency vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard of the safety of others." *Id.* 11-205(e). The term "reckless disregard" has been read as synonymous with the "willful and wanton" standard found in section 2-202. *See Estate of Warner v. United States*, 743 F. Supp. 551, 553 n. 4 (N.D. Ill. 1990). According to defendant, the standard is the same whether section 2-202 or section 11-205 applies.

This is not necessarily so. One Illinois Appellate Court has held that section 11-205 establishes a standard of ordinary care and that this standard trumps section 2-202 in the case of a

3

law enforcement officer driving an emergency vehicle. *Bradshaw v. City of Metropolis*, 293 Ill. App. 3d 389, 688 N.E.2d 332, 335 (5th Dist. 1997). Though the majority of the Illinois Appellate Courts have held that section 2-202, not section 11-205, supplies the governing standard with respect to law enforcement officers engaged in enforcing the law, *see Young v. Forgas*, 308 Ill. App. 3d 553, 720 N.E.2d 360, 364-65 (4th Dist. 1999); *Sanders v. City of Chicago*, 306 Ill. App. 3d 356, 714 N.E.2d 547, 552-53 (1st Dist. 1999); *Carter v. DuPage County Sheriff*, 304 Ill. App. 3d 443, 710 N.E.2d 1263, 1267-68 (2d Dist. 1999), *Bradshaw* illustrates the point that the two statutes do not necessarily point in the same direction. Even if section 11-205 sets a recklessness standard, it imposes conditions not found in section 2-202: the emergency vehicle driver must be responding to an emergency call, may proceed through a stop light only after he has slowed down to the extent necessary for safe operation, and may exceed the speed limit only if doing so does not endanger life or property – requirements that are lacking in section 2-202. Thus it appears that the two standards are not, in fact, equivalent.[1]

Plaintiff argues that none of the prerequisites of section 11-205 has been met. She argues that there was no true emergency because the FBI knew of the suspected bank robber's location before January 11; the other officer whose radio call Peterson heard was told not to make an arrest and did not request any assistance; Peterson has admitted he that understood that the other officer was simply watching the suspected robber's car and that he did not believe the officer to be in any physical danger; and he was nowhere near the other officer's location at the time of the

---

[1] *Young, Carter,* and *Sanders* seem to agree, at least tacitly, with the proposition that section 11-205 establishes a different standard of care than section 2-202: otherwise there would be no reason to be seriously concerned with which of the two statutes applies.

4

radio call and could not rationally have believed that he could offer assistance even if it had been required. Defendant argues that whether an emergency existed within the meaning of section 11-205 is determined not by an objective test of reasonableness but rather by a subjective standard, that is, whether the officer actually believed that an emergency existed. We agree with defendant that the test is subjective and not objective, *see Postich v. Heinrichs,* 267 Ill. App. 3d 236, 641 N.E.2d 975, 978-79 (2d Dist. 1994), but that does not mean the officer's claimed subjective belief is immune from scrutiny. Put another way, the officer's statement that an emergency existed, or the fact that he turned on his siren and flashing lights, does not foreclose inquiry into the issue; the officer's credibility is subject to challenge. *See Currie v. Lao,* 148 Ill. 2d 151, 592 N.E.2d 977, 981-82 (1992) (concluding, in a slightly different context, that an officer's claim that he was responding to an emergency was not worthy of credence). We read plaintiff's argument that no actual emergency existed as an attack on the credibility of Peterson's account. This is a classic fact question, one that the Court cannot resolve on summary judgment.

Plaintiff also argues that the other prerequisites for section 11-205's recklessness standard have not been met, for if Peterson entered a congested intersection at rush hour against a light while traveling 30 miles per hour on slippery pavement, he did not "slow[ ] down as may be required and necessary for safe operation" and was "endanger[ing] life [and] property." As there is some evidence suggesting that Peterson may have been traveling at what arguably could be considered an excessive rate of speed under the alleged conditions, the Court concludes that there are genuine issues of material fact which preclude the Court from concluding as a matter of law that the prerequisites for application of section 11-205's recklessness standard have been met (if in fact that is the appropriate standard).

All of this discussion is beside the point, however, if the appropriate standard of care is provided by section 2-202. Section 2-202 imposes no conditions other than that the law enforcement officer's conduct occur in enforcement of the law. Assuming this is shown (on which see *Aikens v. Morris,* 145 Ill. 2d 283, 583 N.E.2d 487 (1991), and *Simpson v. City of Chicago,* 233 Ill. App. 3d 791, 599 N.E.2d 1043 (1st Dist. 1992)), the standard of care is clear and simple: plaintiff cannot prevail unless she proves that Peterson acted willfully and wantonly. After consideration of the pertinent Illinois authorities, this Court is persuaded that section 2-202 in fact sets the governing standard of care in a case involving a law enforcement officer who is enforcing the law. Section 11-205 applies to all drivers of emergency vehicles, both public and private, whereas section 2-202 applies only to public employees engaged in law enforcement. Each statute stands in its own sphere; the Illinois legislature quite plainly intended to give law enforcement officers engaged in enforcing the law somewhat greater leeway than that given to the ordinary citizen. *See Carter,* 710 N.E.2d at 1267-68; *Sanders,* 714 N.E.2d at 634. And under the FTCA, that is the standard appropriately applied to federal officers in like circumstances. *Estate of Warner,* 743 F. Supp. at 553-54.

For these reasons, we agree with defendant that so long as Peterson's actions are shown to have been performed in the course of enforcing the law, defendant cannot be held liable unless Peterson's conduct is demonstrated to have been willful and wanton. But that does not mean that defendant is entitled to summary judgment. Neither party has directly addressed the issue of whether Peterson's actions were performed "in the enforcement of [the] law" as required by section 2-202. And even were the Court satisfied that this threshold showing had been established as a matter of law, there are genuine issues of fact with regard to the speed at which

6

Peterson entered the intersection and the conditions of the weather and the pavement. It is not beyond question that crossing a crowded intersection against the light at 30 miles per hour in rainy and slippery conditions could be considered willful and wanton. Defendant correctly notes that Peterson does not appear to have slipped or slid before the collision, but if the pavement was slippery that would make it more difficult for vehicles to stop quickly, a risk factor that Peterson arguably knew and consciously ignored. All of these matters are hotly disputed to be sure, but in order to resolve the disputes a trial will be necessary. The Court therefore denies defendant's motion for summary judgment.

The Court likewise denies plaintiff's motion for summary judgment. Plaintiff's motion is premised primarily on the proposition that the governing standard is ordinary care (negligence). Though that presumably will be the standard if Peterson is not shown to have been acting in the enforcement of the law, at the present time that issue is genuinely disputed. Plaintiff argues that even if the willful and wanton standard applies, she is entitled to judgment as a matter of law. The Court disagrees. If Peterson, as he claims, stopped before entering the intersection, crossed at a slow speed, and made sure that the traffic aide had stopped or was stopping traffic in both directions on Michigan Avenue, then he likely would not have acted willfully or wantonly, or even negligently. We say this not to confine defendant to that precise scenario but rather to illustrate that determination of the issue of liability depends upon who one believes.

Both plaintiff's and defendant's motions for summary judgment (8-1, 11-1) are denied.

Date: May 12, 2000

MATTHEW F. KENNELLY
United States District Judge